IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JEFFERY WAYNE STREETER,
    Petitioner,

vs.                                      Case No.: 3:05cv191/MCR/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 and memorandum in support (Docs. 1, 2). Respondent filed an answer and relevant portions of the state court record (Doc. 9). Petitioner filed a reply (Doc. 12). Petitioner also filed a supplement to his reply (Doc. 15) and a third reply (Doc. 20), which have been considered by the court.

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is undisputed by the parties and established by the state court record. Petitioner was charged by information with sale of a controlled substance within 1,000 feet of a church and sale of a counterfeit substance (Doc. 9, Ex. A at 1, 3). The information alleges that Petitioner sold cocaine within 1,000 feet of a church on or about February 28, 2002 and

sold counterfeit crack cocaine on or about March 14, 2002 (*id.*, Ex. A at 1, 3).[1] On November 4, 2002, after an extensive plea colloquy before Judge Kenneth Bell, Petitioner pleaded guilty to both charges (*id.*, Ex. I). Petitioner's plea was open to the court with no agreement regarding the potential term of Petitioner's incarceration (*id.*, Ex. I at 2–3, 10–11). On December 18, 2002, before Judge Kim A. Skievaski, Petitioner was sentenced as a habitual offender to thirty years incarceration on the sale of a controlled substance within 1,000 feet of a church charge and twenty-six months incarceration on the sale of a counterfeit substance charge, with the terms of incarceration to be served concurrently (*id.*, Ex. J; *id.*, Ex. B at 5–12).

Petitioner appealed to the First District Court of Appeal of Florida ("First DCA"), and on June 16, 2003, the public defender's office filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) alleging that there were no valid grounds to raise on appeal (Doc. 9, Ex. B). Petitioner did not file a separate brief.

The First DCA affirmed the lower court's judgement and sentence per curiam without written opinion on October 10, 2003, with the mandate issuing December 3, 2003 (*id.*, Exs. C, D). Streeter v. State, 860 So. 2d 414 (Fla. 1st DCA 2003) (Table).

On June 7, 2004, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 9, Ex. E). Petitioner raised two grounds for relief (*id.*, Ex. E at 5–19). In ground one, he alleged that trial counsel was ineffective for misadvising him about the sentence that he would receive (*id.*, Ex. E at 5–14). In ground two, he alleged that trial counsel was ineffective for failing to properly investigate and interview witnesses or conduct any pre-trial investigation (*id.*, Ex. E at 15–19). On July 7, 2004, the trial court, without conducting an evidentiary hearing, denied Petitioner's motion in a written decision (*id.*, Ex. F).

---

[1] In his supplement to his reply, Petitioner claims that he was improperly charged under § 893.13(1)(e), Florida Statutes with a first degree felony (Doc. 15 at 1). Petitioner alleges that § 893.13(1)(e) "is notably a second degree felony, and not a first degree felony as indicated by the courts in the face of the record" (*id.*). Petitioner is incorrect because he was properly charged with a first degree felony under § 893.13(1)(e) for the sale of cocaine within 1,000 feet of a church (*see* Doc. 9, Ex. A at 1). Specifically, § 893.13(1)(e) provides "it is unlawful for any person to sell . . . a controlled substance not authorized by law in, on, or within 1,000 feet of a physical place for worship at which a church or religious organization regularly conducts religious services." Section 893.13(1)(e)(1) further provides that any person who violates this paragraph with respect to a "controlled substance named or described in . . . [§ 893.03(2)(a)] . . . commits a felony of the first degree." Section 893.03(2)(a)(4) specifically identifies cocaine. Furthermore, the court notes that Petitioner's third reply identifies § 893.13(1)(e) as a first degree felony (*see* Doc. 20 at 4). Thus, Petitioner's argument that he was improperly charged with a first degree felony is devoid of merit.

Case No.: 3:05cv191/MCR/EMT

Petitioner appealed to the First DCA. On February 1, 2005, the First DCA affirmed the trial court's ruling per curiam without written opinion, with the mandate issuing March 1, 2005 (*id.*, Exs. G, H).

Petitioner filed the instant habeas action on May 19, 2005 (Doc. 1 at 7). Respondent concedes that the petition is timely (Doc. 9 at 3).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States

Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

   A.   Ground One: The Defendant Received Affirmative Misadvice [sic] from Trial Counsel Regarding the Sentence He Would Receive by Entering an Open Plea to the Court

(*see* Doc. 1 at 5).

Petitioner claims that his trial counsel was ineffective because counsel assured him that if he entered an open plea of guilty he would receive a suspended sentence or a sentence of fifty-six months in prison from Judge Bell (*see id.* at 5). Then, at sentencing before Judge Skievaski, Petitioner alleges that he wanted to withdraw his plea and proceed to trial (*id.*).[3] Petitioner again

---

[3]The sentencing hearing transcript shows that trial counsel informed the sentencing court that Petitioner wanted to withdraw his plea (Doc. 9, Ex. J at 4). Judge Skievaski remarked that he had no motion to withdraw the plea (*id.*, Ex. J at 3). Petitioner was then sworn and Judge Skievaski informed Petitioner that "Judge Bell is unavailable today, so I

alleges that trial counsel was ineffective because counsel assured him that he would also receive a suspended sentence or a sentence of fifty-six months in prison from Judge Skievaski (*id.*).

Respondent states that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (*see* Doc. 9 at 8; *id.*, Ex. E at 5–14).

        1.     Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof. *Id.* at 687. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.* Engle v. Isaac, 456 U.S. 107, 133–34, 102 S. Ct. 1558, 1574–75, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

---

[(Judge Skievaski)] was asked to preside. . . . I'm making no decision right now as to how I'm going to treat your case. Right now I've got to decide whether or not I'm going to be able to treat your case at all. Okay?" (*id.*). Petitioner responded that he understood (*id.*, Ex. J at 5). Judge Skievaski then inquired of Petitioner if he had "any objection to going forward today before me," to which Petitioner responded "Judge, I'm ready to get it over with before you, sir." (*id.*). The record clearly demonstrates that Petitioner made no motion to withdraw his plea and waived any potential objection to being sentenced by Judge Skievaski (*see id.*, Ex. J at 3, 5).

Case No.: 3:05cv191/MCR/EMT

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

An ineffective assistance of counsel claim may be used to attack the entry of a plea on grounds that the plea was not voluntarily and intelligently made because counsel did not provide Petitioner with "reasonably competent advice." Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S. Ct.

1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)). In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771, 90 S. Ct. at 1449)). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59, 106 S. Ct. 370. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60, 106 S. Ct. at 370–71. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pleaded guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* Diaz, 930 F.2d at 835; *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

        2.      Federal Review of State Court Decision

In his Rule 3.850 motion, Petitioner claimed that trial counsel's assistance was ineffective because counsel advised Petitioner that he would receive a sentence of no more than fifty-six months followed by probation from Judge Bell pursuant to his open plea (Doc. 9, Ex. E at 5). Petitioner also alleged that when he appeared for sentencing and discovered that Judge Bell would not be determining his sentence, Petitioner informed trial counsel that he wished to withdraw his plea (*id.*,

Ex. E at 8).  Petitioner alleged that the sentencing court should have conducted a Nelson inquiry at this point and erred by not doing so (*id.*, Ex. E at 7, 11).[4]  Next, Petitioner alleged that at the sentencing hearing he spoke with trial counsel who again advised him that he would receive a sentence of fifty-six months followed by probation from Judge Skievaski (*id.*, Ex. E at 8–9). Petitioner further alleged that trial counsel "nudged" him and told him not to question the judge because once the judge learned that Petitioner had voluntarily entered a treatment program and that the probation officer was recommending a suspended sentence, the judge most likely would impose a guideline sentence (*id.*, Ex. E at 9).  Petitioner alleged that based on this information he "agreed to be sentenced by Judge Skievaski, and not Judge Bell" (*id.*).  Additionally, Petitioner alleged that during the sentencing proceeding trial counsel was deficient for failing to offer any legal theories to support a downward departure from the scoresheet sentence of fifty-six months (*id.*, Ex. E at 12). Finally, Petitioner alleged that he was prejudiced by the trial court's imposition of a thirty-year sentence because he would have insisted on going to trial but for trial counsel's deficient performance (*id.*, Ex. E at 13–14).

In his Rule 3.850 motion, Petitioner argued that he had met both prongs of Strickland (*id.*, Ex. E at 14).  Specifically, Petitioner argued that trial counsel's performance was deficient because counsel advised Petitioner that he would be sentenced to fifty-six months (*id.* at 5–13).  Petitioner also alleged that he was prejudiced by this ineffective assistance because he would have insisted on going to trial (*id.*, Ex. E at 14).

In its written decision denying Petitioner's motion, the state court did not explicitly cite Strickland; however, neither the reasoning nor the result of the state court decision contradicts it. Thus, Petitioner has failed to satisfy the "contrary to" clause of § 2254.  *See* Early v. Packer, 537 U.S. at 8 (holding that a state court is not required to cite Supreme Court cases or even be aware of the cases "so long as neither the reasoning nor the result of the state-court decision contradicts

---

[4]Petitioner appears to rely on Nelson v. State, 274 So. 2d 256, 258–59 (Fla. 4th DCA 1973).  In Nelson, "the court established a procedure which a trial court must follow, consistent with an indigent's right to effective representation, when a defendant expresses a desire to discharge court-appointed counsel prior to trial because of alleged incompetency of counsel."  *Accord* Jones v. State, 658 So. 2d 122, 124 (Fla. 2d DCA 1995) (citing Nelson, 274 So. 2d at 258–59).  Petitioner has not raised this claim here.  Petitioner's only claim in Ground One of the instant petition alleges ineffective assistance of counsel (*see* Doc. 1 at 5; Doc. 2 at 2–5 (Petitioner's memorandum of law in support of his habeas petition)).

them"). Therefore, only remaining question is whether the state court decision was objectively unreasonable.

The state court noted that Petitioner claimed that his trial counsel was ineffective because counsel misinformed him about the length of the possible sentence he faced, which is the same issue presented here (*see* Doc. 1 at 5; Doc. 9, Ex. F at 1). The court noted that this type of claim normally requires an evidentiary hearing, but explained that summary denial of the claim is proper when the defendant is informed of the possible sentence by the court (*id.* (citing Bond v. State, 695 So. 2d 778 (Fla. 1st DCA 1997) (holding that if the record does not conclusively refute a defendant's claim that a plea was based on the erroneous advice of counsel, the Rule 3.850 court must grant an evidentiary hearing)). Then, the state court found as fact that the transcript of Petitioner's plea colloquy[5] conclusively established that the trial court properly advised Petitioner of the potential penalties he faced (*see id.*, Ex. F at 1–2).

The transcript of Petitioner's plea colloquy support's the trial court's factual findings. At the beginning of the plea hearing, the prosecutor filed a notice of intent to seek habitual felony offender sanctions and personally served Petitioner with copies of the State's notice (*id.*, Ex. I at 2). Then, Petitioner's trial counsel announced that he had discussed the charges with Petitioner, and Petitioner wanted to "plea straight up to them" (*id.*). Petitioner was then sworn an the following exchange took place (*id.*, Ex. I at 4).

> The Court:   [Petitioner], you're charged . . . with the sale of cocaine within a thousand feet of the Springhill Baptist Church located at 1200 West Jackson Street . . . [and] sale of a counterfeit controlled substance . . . . [T]he maximum sentence if you're not treated as a habitual for the sale of the counterfeit controlled substance would be five years state prison. The maximum sentence for the sale of the cocaine within a thousand feet of a church is 30 years without being habitualized. But if you're habitualized then you could get up to 70 years in state prison, which is obviously beyond your life span. Do you understand that?
> [Petitioner]:   Yes, sir.

---

[5]Although the court's order said "trial" transcript, it is evident that court was referring to the transcript of Petitioner's plea colloquy because Petitioner did not go to trial, and the maximum sentences he faced were discussed during the colloquy (*see* Doc. 9, Ex. I (transcript of plea colloquy)).

| | |
|---|---|
| The Court: | . . . [I]t is my understanding you wish to plead guilty to these charges and plead straight up to the court, is that correct? |
| [Petitioner]: | Judge, I need to be talked to a little bit more about this. I'm lost on this. I want to be straight with you. I don't want to clog up the courts or nothing. [sic] But I just need, if I could get a judge trial or something Judge, I would rather for you to weigh this. |
| The Court: | Sir, what my understanding was is that you wished to plead guilty to these charges. |
| [Petitioner]: | But I don't want to put myself into a predicament, Judge, where I can't do nothing about it later on. |
| The Court: | I understand. See the problem is we all make choices but none of us are free to escape the consequences of our choices. |
| [Petitioner]: | True and I understand. |
| The Court: | If you chose to sell these drugs as charged and don't have a legitimate defense, you're in a real bad box because you made a real bad choice. |
| [Petitioner]: | I know. |
| The Court: | If you didn't do what the State has charged you with doing or if the State doesn't have a strong case, it has a weak case and they may not be able to prove it to the jury, then let's go to trial. |
| [Petitioner]: | Okay. See, now that's where I'm messed up at, Judge. I mean I don't want to say [trial counsel] is not doing his job, I'm not saying that nobody isn't [sic] doing their job but I haven't seen nothing. |
| The Court: | My understanding is these are videotaped buys? |
| [Prosecutor]: | Yes and it couldn't be more clear. |
| [Defense]: | He's watched the video twice, Judge. |
| [Petitioner]: | I watched the video, don't get me wrong, Judge, I watched the video once but I haven't seen no [sic] other evidence. |

(*id.*, Ex. I at 4–6). Judge Bell then explained that the typical video shows an undercover police officer or a confidential informant driving in a vehicle with the camera pointing toward the window (*id.*, Ex. I at 6). The suspect then conducts a drug transaction through the window and is identifiable on the videotape (*see id.*).

| | |
|---|---|
| [Petitioner]: | That's what [trial counsel] explained to me, right, and he said don't go through this but I just don't know, Judge, you know, I don't know if I should cop a plea or if I should have more time to think about this or what because I never, I haven't had nothing — I haven't had nothing [sic] to go on, Judge. No more than he [was] telling me. |
| The Court: | Sir, what more do you need than a videotape of the transaction? You know what the officers are going to say. They were driving around in the car, they drove on this location, a black male approached the window, offered to sell the substance and they are going to identify, |

| | |
|---|---|
| | apparently identify you as the person who did that. It is not real complicated. There are serious consequences, sir. There is no question about that. |
| [Petitioner]: | Yes, sir. |
| The Court: | But the question that I have right now is, is there any serious doubt that the State if it goes before the jury is going to be able to prove that you did what you're charged with doing? |
| [Petitioner]: | Well, the original, whatever we were supposed to do originally today, let's continue with it then, Judge. |
| The Court: | . . . [Trial counsel] is saying, [trial counsel has] shown you the basic material that the State has, they've got a pretty good case. |
| [Petitioner]: | Yes, sir. |
| The Court: | You don't have a real good defense. So the best you can do is probably throw yourself on the mercy of the Court because we're basically going to waste our time going to trial. |
| [Petitioner]: | Okay. |
| The Court: | Because it is kind of a slam dunk. |
| [Petitioner]: | Yes, sir, I understand you, Judge. |
| The Court: | I'm putting it in very common language. |
| [Petitioner]: | You did, I understand you now. |
| The Court: | If it is a good controlled buy with a videotape, that's pretty much a slam dunk case for the State and if the video is clear enough and it shows you . . . exchanging something for the money — I've never seen the State lose one of those cases, to be honest with you. |
| [Petitioner]: | Well, it wouldn't sit right for me to argue about it or nothing [sic] anyway, Judge, so I'm going to accept how [trial counsel] was putting it to you earlier, whatever the plea, I'm going to throw myself on the mercy of the Court. |
| The Court: | Okay. |

(*id.*, Ex. I at 6–9). After Petitioner indicated his desire to go forward with the plea, the following exchange took place between Petitioner and Judge Bell (*id.*, Ex. I at 9).

| | |
|---|---|
| The Court: | . . .[D]o you understand that you have the right to go to trial on these charges and at the trial the State would be required to prove to a jury of six people your guilt on these charges beyond a reasonable doubt, do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | And at that trial you could not be made to testify against yourself. You could testify if you wanted to but you could not be made to testify against yourself. Do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | And then [trial counsel] would be able to challenge or confront anything that the State witnesses might say. Do you understand that? |

| | |
|---|---|
| [Petitioner]: | Yes, sir. |
| The Court: | And you could also bring any witnesses that might help your case, do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | And then you would be able to appeal to a higher court any finding of guilt by that jury and any actions by this Court, do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | And by entering into this plea you're waiving all of those rights to go to [a] jury trial and make the State prove the case and then appeal your guilt to a higher court, do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | Has anybody threatened you or coerced you into entering the plea? |
| [Petitioner]: | No, sir. |
| The Court: | Have you had enough time to speak with [trial counsel] about the charges against you and any defense you may have to the charges? You know what the charges are, a controlled buy on videotape. |
| [Petitioner]: | Yes, sir. |
| The Court: | [Trial counsel] has said that he's shown you the videotape and given you an opportunity to view the videotape, right? |
| [Petitioner]: | Yes, sir. |
| The Court: | And you know basically what the officers are going to say, is that right? |
| [Petitioner]: | Yes, sir. |
| The Court: | And you understand that the maximum sentence that could be imposed if you are habitualized, which according to the State you've been habitualized before, is that correct? |
| [Petitioner]: | Yes, I have, sir. |
| The Court: | And do you understand if you're habitualized on these charges, then you could serve up to 70 years in state prison? |
| [Petitioner]: | Yes. |
| The Court: | Do you understand that? |
| [Petitioner]: | Yes, I do. |
| The Court: | Even if you're not habitualized, you're looking at a minimum of 56 months state prison unless there's a basis for a downward departure with a maximum of 35 years, do you understand that? |
| [Petitioner]: | Yes, I understand. |
| The Court: | And do you have any questions about the plea or the process? |
| [Petitioner]: | No, sir. |
| The Court: | And do you have any questions about [trial counsel] or his services in this case? Anything else's [sic] he needs to do? |
| [Defense]: | Judge, I'm going to meet with him in between now and the sentencing date. |

| | |
|---|---|
| The Court: | I understand that but in order to make this decision, is there anything? |
| [Petitioner]: | As long as [trial counsel] — I just want [trial counsel] to hear me out, that's all, Judge, Your Honor and present it to you. |
| | . . . |
| The Court: | I'll accept the plea and find it is freely, voluntarily, and knowingly entered into and that there's a sufficient factual basis. Order a [pre-sentencing investigation] returnable on December 17th at this point but we'll set a sentencing date. |
| [Prosecutor]: | Judge, for the record as to the voluntariness and the fact that [Petitioner] understands what he's doing, I show that he's pled on at least six different dates to at least 11 different felonies, the last one being in 1991 when he pled to two cases of sale and two cases of possession of cocaine and was sentenced to 15 years as a habitual felony offender so I want that included to show the knowledge of what he's doing. |
| The Court: | Okay. |

(*id.*, Ex. I at 9–11).

In support of its finding that trial counsel was not ineffective, the state court attached the transcript of the plea colloquy to its written decision (*see id.*, Ex. F at 1–2). The transcript shows that Petitioner was articulate and clearly understood the consequences of his plea, and further, that Petitioner felt no hesitation to inquire about areas of the process he did not understand (*id.*, Ex. I at 2–11).[6] Petitioner informed the court that he would be throwing himself on the mercy of the sentencing court (*see id.*, Ex. I at 8). Additionally, the court explained to Petitioner the possible sentences he faced, and Petitioner stated under oath that he knew he faced up to seventy years imprisonment as a habitual offender and up to thirty-five years imprisonment if he was not habitualized (*see id.*, Ex. I at 9–11). The Supreme Court has stated that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in

---

[6]In his third reply, Petitioner alleges that he "was intimidated by Judge [Bell's] comment[s] leading towards the plea discussion, which created in the mind of [] Petitioner fear, confusion, uncertainty[,] and anxiety" (Doc. 20 at 2). Petitioner's argument is not supported by the transcript of Petitioner's plea colloquy. Specifically, Judge Bell asked Petitioner if "anybody threatened you or coerced you into entering the plea," and he responded, "No" (Doc. 9, Ex. I at 10). Judge Bell also specifically asked Petitioner if he had enough time to confer with defense counsel and Petitioner responded "Yes" (*id.*). Near the end of the plea colloquy, Petitioner also explained that he "just want[s trial counsel] to hear [him] out, that's all" and then "present [his statements] to" Judge Bell (*id.*, Ex. I at 11). It is clear from the record that Petitioner was not intimidated by Judge Bell; Petitioner's argument to the contrary is unfounded.

Case No.: 3:05cv191/MCR/EMT

open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.* Given that the court explained the plea agreement and possible sentences to Petitioner, and Petitioner stated that he understood, even if trial counsel had earlier misadvised Petitioner about the actual sentence he faced, Petitioner cannot show prejudice because the trial court clearly explained the plea agreement and its consequences to Petitioner. *See, e.g.*, United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993) (explaining that a defendant failed to establish that he suffered prejudiced from counsel's inaccurate sentence prediction because the court explained that defendant's final sentence may differ from the term calculated by his counsel); *see also* Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996) (recognizing that when the trial court explains the elements of a charge and the consequences of pleading guilty and the defendant acknowledges that he understands, defendant has suffered no prejudice as a result of deficient performance by counsel in connection with the guilty plea).

As discussed above, the state court's factual determinations are presumed correct unless Petitioner rebuts the finding with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has failed to present clear and convincing evidence to rebut the state court's factual determinations. Furthermore, the state court's findings are amply supported by the record. Because the state court reasonably determined that Petitioner's ineffective assistance claim was factually unsupported, the denial of his claim was not an unreasonable application of Strickland.

> B. Ground Two: Trial Counsel Was Ineffective For Failing to Properly Investigate and Interview Witnesses or to Conduct Any Pre-Trial Investigation

(Doc. 1 at 5).

Petitioner claims he informed trial counsel prior to entering his guilty plea that he was not within 1,000 feet of a church when he sold a controlled substance, "and if he was, he was 'lured' into the 1,000 [foot] zone by the police officers conducting the sting operation" (*id.*). Petitioner alleges that trial counsel did not investigate Petitioner's information by, among other things, taking measurements or interviewing any of the police officers (*id.*). Petitioner argues that but for trial counsel's deficient performance in failing to collect evidence or interview witnesses, Petitioner

would not have entered his plea and was therefore prejudiced by trial counsel's failure to investigate because he would have insisted on going to trial (*see* Doc. 2 at 5 (Petitioner's memorandum of law)).

Respondent argues Petitioner did not allege in his state post-conviction relief motion that he would have insisted on going to trial but for trial counsel's alleged failure to investigate (Doc. 9 at 16). Thus, Respondent argues Ground Two is not properly exhausted (*id.*). Respondent claims, however, that because the judgement and sentence in Petitioner's case became final on December 3, 2003, Petitioner "still has until approximately the end of November[] 2005 in which to file any additional postconviction motions in state court" (*id.*).[7] Therefore, Respondent urges this court to either dismiss Ground Two without prejudice as unexhausted or stay the proceedings in the instant case to permit Petitioner the opportunity to return to state court and exhaust Ground Two (*id.* at 16–17). Alternatively, Respondent argues that Petitioner is not entitled to relief on the merits of Ground Two (*id.* at 17–21).

In his reply to Respondent's answer, Petitioner first argues that Ground Two is properly exhausted (Doc. 12 at 18–20). Petitioner contends that he "sufficiently alleged [in state court] that but for counsel's deficient and prejudice [sic] performance the result of <u>the proceeding would have been different</u>" (*id.* (emphasis in original)).

The undersigned finds that Ground Two was properly exhausted in the state court. First, in his Rule 3.850 motion, Petitioner alleged that trial counsel was ineffective for failing to properly investigate and interview witnesses or to conduct any pre-trial investigation (Doc. 9, Ex. E at 15–19). Petitioner contended that he informed trial counsel that he disputed the State's allegation that he was within 1,000 feet of a church, and he requested that trial counsel take measurements to ascertain the true distance from the church to the point of the sale (*id.* at 16). Alternatively, Petitioner alleged that if he was within 1000 feet of a church, he was lured to within 1,000 feet by law enforcement officers, and counsel was ineffective for failing to investigate whether Petitioner was "lured into the zone" (*id.*). Petitioner further asserted that he was prejudiced as a result of trial counsel's unprofessional errors, but did not state the nature of the prejudice (*see id.* at 19). Second, in denying Petitioner's claim, as discussed *infra*, the state court addressed the merits of Petitioner's

---

[7]Respondent's answer was filed on August 8, 2005 (*id.* at 22). Neither party has presented any state court filing that was made by Petitioner between August 2005 and December 2005.

Case No.: 3:05cv191/MCR/EMT

argument "that counsel was ineffective for failing to investigate whether the [drug sale] was within 1,000 feet of a church, and if so, whether [Petitioner] was entrapped by police into committing the offense" (Doc. 9, Ex. F at 2).  Therefore, Ground Two is properly presented to this court for review.

      1.     Clearly Established Supreme Court Law

As discussed *supra*, the two-prong Strickland standard is the legal standard applicable to claims of ineffective assistance of counsel.

      2.     Federal Review of State Court Decision

Petitioner raised this ground in his Rule 3.850 motion (*see* Doc. 9, Ex. E at 15–19).  In its written decision denying Petitioner's motion, the state court did not explicitly cite Strickland; however, neither the reasoning nor the result of the state court decision contradicts it.  Thus, Petitioner has failed to satisfy the "contrary to" clause of § 2254.  Therefore, only remaining question is whether the state court decision was objectively unreasonable.

The state court denied Petitioner's Rule 3.850 motion because it concluded that Petitioner failed:

> to allege any prejudice in regard to this allegation.  First, he does not assert that the location of the offense is further than 1,000 feet away from a church.  Second, [Petitioner] presents no more than a bare allegation of possible entrapment.  Finally, [Petitioner] waived all defenses when he plead [sic] to the offense — and he does not claim that, but for the deficient performance of [trial] counsel, he would have insisted on going to trial.

(Doc. 9, Ex. F at 2).  Thus, the Rule 3.850 court's decision reasons that, even if counsel's performance was deficient, Petitioner did not adequately allege that he suffered any prejudice and therefore cannot satisfy the second prong of the Strickland standard (*see id.*; *see* Strickland, 466 U.S. at 687–88 (explaining that petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different)).  *See also* Diaz, 930 F.2d at 835 (explaining that under the second prong of Strickland, Petitioner must come forward with some objective evidence to show that but for

counsel's errors he would not have accepted the plea offer and noting that conclusory after-the-fact statements that Petitioner would not have pleaded guilty do not meet this requirement).[8]

Petitioner made the following relevant factual allegations in his Rule 3.850 motion:

> In the instant case, [Petitioner] was charged with selling a rock of cocaine within 1,000 feet of a church. [Petitioner] disputed that contention and requested that measurements be taken from the alleged sale to the church. Trial counsel failed to do so. [Petitioner] further relayed to trial counsel that if the sale was within 1,000 feet, he was lured into the zone by law enforcement officers. Trial counsel failed to investigate either allegation and badgered [Petitioner] to plead guilty.

(Doc. 9, Ex. E at 16). Petitioner then identified the two prongs of Strickland (*id.*, Ex. E at 17–18), and argued:

> [t]he above allegations demonstrate that [trial counsel] was ineffective for failing to properly investigate the case and to ascertain whether [Petitioner] was in fact within 1,000 feet of a church, and/or whether he was lured into a church zone to enlarge the penalty of the sale. It has additionally been demonstrated that [Petitioner] was prejudiced as a result of his attorney's deficiencies. As was noted in Robinson, *supra*, a demonstration of prejudice under Strickland need only show that the attorney's performance put the whole case in such a different light as to undermine the court's confidence in the outcome of the proceedings. Consequently, [Petitioner] has presented a facially sufficient demonstration of broth prongs of Strickland.

(*id.*, Ex. E at 18–19).

This court cannot conclude that the state court erred by determining that Petitioner's allegations of prejudice were insufficient. The record supports the state court's conclusion that Petitioner did no more than merely assert he was "prejudiced" by trial counsel's allegedly deficient performance, without identifying how he was prejudiced (*see id.*, Ex. F at 2). As this court is aware, Petitioner is not "entitled to an evidentiary hearing when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.' " *See* Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (quoting Blackledge, 431 U.S. at 73–74). Moreover, Petitioner did not allege, as required by Strickland in a plea situation,

---

[8]The court notes that Petitioner's arguments in his third reply regarding the potential validity of an entrapment defense are exactly the type of after-the-face statements the Diaz court found unavailing (*see* Doc. 20 at 8). Even though Petitioner now contends that the " 'entrapment defense' . . . [was his] only plausible option," he never alleged that he suffered any prejudice as a result of defense counsel's alleged deficiencies or that any evidence supported an entrapment defense (*id.*; *see* Doc. 9, Ex. F at 2).

Case No.: 3:05cv191/MCR/EMT

that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *See* Hill, 474 U.S. at 59.  Therefore, the state court's decision denying Petitioner's claim was not an unreasonable application of Strickland and Petitioner is not entitled to relief.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.
2. That all pending motions be **DENIED** as moot.

At Pensacola, Florida, this 16th day of May 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636;** United States v. Roberts, **858 F.2d 698, 701 (11th Cir. 1988).**